**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LOANDEPOT.COM, LLC, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : No. |
| v. | : |
| | : |
| CROSSCOUNTRY MORTGAGE, INC., | : |
| MATTHEW REID, and ANDREA | : |
| MANARA, | : |
| | : |
| Defendants. | : |

**VERIFIED COMPLAINT FOR TEMPORARY/PRELIMINARY
INJUNCTIVE AND OTHER RELIEF**

Plaintiff loanDepot.com, LLC ("loanDepot" or the "Company"), by and through its

attorneys, Fisher & Phillips LLP, by way of Verified Complaint seeking temporary, preliminary,

and permanent injunctive relief and damages against Defendants CrossCountry Mortgage, Inc.

("CrossCountry"), Matthew Reid ("Reid"), and Andrea Manara ("Manara"; Reid and Manara

referred to collectively herein as the "Individual Defendants"; all three Defendants referred to

collectively herein as "Defendants"), states and alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff loanDepot is a limited liability company organized under the laws of the

State of Delaware and with its principal place of business at 26642 Towne Center Drive, Foothill

Ranch, California 92610.  All the members of loanDepot are residents of the State of California.

loanDepot is in the business of making home mortgage, personal, and home equity loans.

1

2.      Since launching in 2010, loanDepot has funded more than $125 billion in such loans. In just a few short years, loanDepot has become the nation's fifth largest retail mortgage originator, and the second largest nonbank consumer lender. Committed to leading the lending industry into the next generation of modern lending, the Company continues to make significant reinvestments into its proprietary technology and marketing platform, credit and risk models, and dynamic product delivery systems to empower consumers with access to credit. loanDepot employs 6,500-plus team members across the country, including 1,800-plus licensed loan officers who hold more than 14,000 licenses. The Company operates 180-plus local loan locations nationwide.

3.      Defendant CrossCountry is a corporation organized under the laws of Ohio and with its principal place of business at 6850 Miller Road, Brecksville, Ohio 44141. CrossCountry has locations in all 50 states, including multiple locations in the State of New Jersey, among which are its offices at 14 Commerce Drive, Cranford, New Jersey 07016. According to its website, CrossCountry offers "a wide portfolio of home purchase, refinance, and home equity products." It is a direct competitor of loanDepot.

4.      Defendant Reid was employed by loanDepot and its predecessors from 2010 until he resigned on June 8, 2018. While employed by loanDepot, Reid was a Branch Manager and Mortgage Loan Originator at loanDepot's office at 387 South Main Street, New City, New York 10956.   Reid's responsibilities at loanDepot included originating and closing home mortgage and home equity loans.  Reid is currently employed by CrossCountry as a Branch Manager at its office at 14 Commerce Drive, Cranford, New Jersey 07016.  Reid's home address is 15 Bradl Lane, Nanuet, New York 10954.

2

5.     Defendant Manara was employed by loanDepot from January 10, 2017, until she resigned on June 13, 2018.  While employed by loanDepot, Manara was Reid's Sales Assistant at loanDepot's office at 387 South Main Street, New City, New York 10956.  Manara is currently employed as a Sales Assistant at CrossCountry, on information and belief reporting directly to Reid at CrossCountry office at 14 Commerce Drive, Cranford, New Jersey 07016.  Manara's home address is 254 Congers Road, New City, New York 10956.

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this action includes claims arising under the laws of the United States.

7.     The claims arise under the following laws of the United States, either one of which would be an adequate, independent basis for federal question jurisdiction as a matter of law: 18 U.S.C. §1030 and/or 18 U.S.C. §1832 et seq.

8.     The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1367 over state law claims.

9.     The Court also has diversity jurisdiction under 28 U.S.C. §1332, because there is complete diversity of citizenship and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Injunctive relief is also sought.

10.    Venue in this Court is appropriate under 28 U.S.C. §1391, because Defendant Reid works in this District, Defendant CrossCountry maintains multiple offices in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

3

## STATEMENT OF FACTS

**I.    Defendant CrossCountry's Expansion of Its Business in New York, New Jersey, and Connecticut by Raiding loanDepot Employees.**

11.    CrossCountry was founded in 2003 and started with a single branch with fewer than 10 employees.  CrossCountry has aggressively grown its business in New York, New Jersey, and Connecticut by motivating the Company's Branch Managers, Loan Originators, Loan Officers, and other employees to violate their duty of loyalty and post-employment contractual duties to loanDepot.

12.    Through CrossCountry's onboarding and recruitment activities, CrossCountry orchestrated the resignation of Defendants Reid and Manara (the latter through Reid) and, upon information and belief, other loanDepot employees, and facilitated the breach of their duty of loyalty and contractual obligations, by among other things,:

   a.    conducting "pre-transition strategy sessions" to plan and orchestrate their resignation from loanDepot, their expedited removal of confidential client information and files, and the conversion of loanDepot customers to CrossCountry customers;

   b.    providing a "migration team" dedicated to their transition;

   c.    providing personal assistance through their licensing department to transfer their licenses while they are still employed by loanDepot;

   d.    preparing advertising and marketing materials directed at loanDepot customers based on customer lists compiled by loanDepot employees using loanDepot resources and information.

13.    CrossCountry encouraged former loanDepot employee Defendant Reid, as well as nonparty former loanDepot employees Justin Lieberman ("Lieberman"), a former loanDepot Branch Manager, and Christopher Albanese ("Albanese"), Peter Costakos ("Costakos"), and Peter Lucia ("Lucia"), former Loan Officers, to breach their contractual obligations to loanDepot through monetary incentives, including but not limited to lucrative signing bonuses

4

and CrossCountry's Employee Referral Bonus Program, which provided them with compensation for recruiting loanDepot employees in violation of their non-solicitation obligations to loanDepot.

14.     CrossCountry's mode of operation has been to use former loanDepot employees subsequently employed by CrossCountry to solicit other loanDepot employees to leave the Company and work for CrossCountry.  CrossCountry encourages and assists such loanDepot employees, before they formally resign from loanDepot, to slow or stop the origination and/or processing of home mortgage and home equity loans at loanDepot in order to bring such loans with them when they formally resign from loanDepot and begin working for CrossCountry.  In the process, loanDepot employees transfer confidential and private customer information, such as social security numbers, account numbers, property information, and financial information, outside the Company, including to their own personal e-mail accounts and to CrossCountry. CrossCountry has targeted loanDepot's New York, New Jersey, and Connecticut Region ("NNC Region") for the raiding of the Company's employees and customers in an effort to profit and grow its business at loanDepot's expense and/or with the intention of injuring loanDepot.

15.     At CrossCountry's behest and in violation of their own legal obligations, Reid, Lieberman, Albanese, Costakos, and Lucia have improperly solicited loanDepot employees to leave the Company to work for CrossCountry.

16.     Lieberman, Albanese, Costakos, and Lucia, all resigned together from loanDepot on February 10, 2017, and immediately became employees for CrossCountry.  Since then, CrossCountry has successfully recruited at least 23 loanDepot employees from the NNC region. Among the loanDepot employees CrossCountry has successfully recruited is Defendant Reid, whom CrossCountry paid a $250,000 sign on bonus when he formally began employment with

5

CrossCountry.   CrossCountry conducts its program to pirate loanDepot employees by encouraging and assisting Lieberman, Albanese, Costakos, Lucia, and now Reid, to breach their contractual obligations to loanDepot by soliciting their former loanDepot colleagues to leave the Company and come work instead for CrossCountry.  As a result of CrossCountry's pirating of loanDepot's workforce, the Company has had to close two branches.

17.     At the behest and with the encouragement and assistance of CrossCountry, Reid, Lieberman, Albanese, Costakos, and Lucia are continuing to violate their contractual obligations to loanDepot by their ongoing solicitation of loanDepot employees to leave the Company and come work instead for CrossCountry.

## II.     The Individual Defendants' Diversion of loanDepot Customers to CrossCountry.

18.     Upon information and belief, even before resigning from loanDepot, the Individual Defendants began working for CrossCountry,

19.     Reid did not formally resign from loanDepot until June 8, 2018, but beginning in early May, he virtually stopped originating and processing loans for loanDepot.

20.     At the same time, Reid began e-mailing private customer information and loan-related documents to himself, including to his private Hotmail e-mail account, matt_reid75@hotmail.com.

21.     For example, on May 1, 2018, Reid e-mailed himself at his loanDepot e-mail address the "April Pipeline," which included the names of 57 customers, loan information, and represented nearly $19 million worth of business. (A true and correct copy of the referenced email and attachment  is attached hereto as Exhibit A.)

6

22.     On Friday May 11, 2018, at 8:58 PM, Reid sent a loan pre-approval for $325,000 for customers R&J R[1] to his Hotmail account. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit B.)

23.     On Friday May 11, 2018, at 9:09 PM, Reid sent a loan pre-approval for $650,000 for customers JS and SS to his Hotmail account. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit C.)

24.     On Sunday May 13, 2018, at 5:25 PM, Reid sent to his Hotmail account the following documents for customer DH:  loanDepot Mortgage Loan Questionnaire; driver's license; 2016 and 2017 Form 1040 U.S. Individual Income Tax Returns; 2016 and 2017 W-2 Earning Statements; two pay stubs; and banking statements from two different banks. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit D.)

25.     On the day of Reid's resignation from loanDepot, Friday June 8, 2018, at 6:18 AM, he sent to his Hotmail account information on a new loan customer, TS. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit E.)

26.     On Friday June 8, 2018, at 11:18 AM, Reid sent to his Hotmail account a copy of the fully executed residential sales contract of customers JB and YC. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit F.)

27.     On Friday June 8, 2018, at 11:20 AM, Reid sent to his Hotmail account a copy of the fully executed residential sales contract of customers JS and SS. A redacted true and correct copy of the referenced email is attached hereto as Exhibit S.)

---

[1] To preserve customer privacy, loans are referred to by customer initials only.

7

28.     On Friday June 8, 2018, at 12:10 PM, Reid sent to his Hotmail account a copy of the fully executed residential sales contract of customer KS. (A redacted true and correct copy of the referenced email is attached hereto as Exhibit U.)

29.     On Friday June 8, 2018, at 3:32 PM, Reid sent to his Hotmail account a copy of the fully executed residential sales contract of customer AL. A redacted true and correct copy of the referenced email is attached hereto as Exhibit G.)

30.     All of the foregoing loans, except the one for customer DH, disappeared from loanDepot's portfolio after Reid's resignation, and on information and belief closed at CrossCountry.

31.     Reid also e-mailed confidential information directly to CrossCountry before his resignation from loanDepot.

32.     For example, Justin Lieberman had been a Branch Manager for loanDepot until his resignation on or about February 10, 2017, followed by his immediate hiring by CrossCountry, for whom he is currently a Branch Manager at the same street address as Defendant Reid, 14 Commerce Drive, Cranford, New Jersey 07016. On May 14, 2018, Reid e-mailed to Defendant Lieberman at CrossCountry (justinlieberman@myccmortgage.com) a copy of his, Reid's, Branch Manager Dashboard Report with data current as of December 24, 2017. The Dashboard Report sets forth: (1) pipeline information, including the Average Daily Pipeline, Current Pipeline Locked, Current Pipeline Not Locked, and Locked Pipeline Over/Under; (2) productivity information, including month over month applications, locks, and closings; year over year closings; and quarter over quarter closings; (3) profitability information, with detailed pricing and revenue data; (4) quality information, including fallout and turn times; and (5) a list of "problem loans" that includes the names of the borrowers and loan numbers.

8

(A true and correct copy of Reid's e-mail to Lieberman (with copy of Dashboard Report omitted) is attached hereto as Exhibit H.)

33.    Reid involved Defendant Manara in his unlawful conduct while they were both still employed by the Company. On Wednesday June 6, 2018, at 11:06 AM, Reid e-mailed Manara with instructions to "Start overnighting files to clients that closed. Can you send me a list of what is in drawer?"

34.    In response, at 11:48 AM, Manara e-mailed Reid a list of 55 customers.

35.    Replying to Manara's e-mail at 11:49 AM, Reid wrote, "Wow ok we need to likely **bring a lot of these with us**. Orinignals [sic] keep it overnight. If copies make sure we have them **scanned and shred**" (emphasis added). (A true and correct copy of the June 6, 2018, e-mail string between Reid and Manara is attached hereto as Exhibit I (customer names redacted).)

36.    Even before his resignation from loanDepot, Reid was working for CrossCountry on loans with the assistance of CrossCountry personnel.  For example,

- During early June, Reid was working with attorney Diana Andriotis  on a loan for borrower O which was subject to a contract of sale dated May 30, 2018, which Reid did not enter into loanDepot's system but instead held until he joined CrossCountry, as evidenced by email dated May 30, June 11 and June 13.

- On June 4, before Reid's resignation, Reid was working on a loan for LS which he did not log into loanDepot's system but instead held until he joined CrossCountry, as evidenced by email dated June 4, 2018 and June 12, 2018.

- On June 6, before Reid's resignation, Cody Bertke of CrossCountry (e-mail Cody.Bertke@myccmortgage.com) was already working on a loan with Reid for

9

loanDepot customers JA and SA, which did not close at loanDepot but, on information and belief, closed at CrossCountry.

True and correct copies of the referenced email are attached hereto as Exhibit J (customer names redacted).

37.     On June 8, 2018, the day of Reid's resignation from the Company, there was an e-mail inquiry regarding an updated loan preapproval for customer TS, whose loan did not close at loanDepot, but presumably at CrossCountry. A true and correct copy of the June 8, 2018 e-mail string between Reid and TS's real estate broker is attached hereto as Exhibit K (customer names redacted).

38.     On June 18, 2018, loanDepot discovered several email addressed to Reed from customers (or their agents) inquiring about the status of loan and/or providing information about loans that were in process but were not in in loanDepot's records, presumably because Reid originated these loans on behalf of CrossCountry notwithstanding the fact that he was employed by loanDepot. These loans included:

- Loan for borrower RK as reflected by June 12, 2018 email inquiring about upcoming closing;

- Loan for AR and ER as reflected by multiple email from Geico Insurance regarding homeowners insurance for  property purchased and reflecting involvement of CrossCountry employees Cody Bertke and Johanne Jasmin,  as reflected in email dated June 14, 2018

- Loan for S as reflected by June 15, 2018 email containing title report;

10

- Loan with respect to client P with respect to sale of property in Ridgewood NJ as reflected in email dated June 17, 2018;

True and correct copies of the referenced email are attached hereto as Exhibit L (customer names redacted).

39.     On June 27, 2018, loanDepot discovered that a loan for customer RH that Reid had originated at loanDepot and was originally set for closing on approximately May 27, 2018, was delayed until at least July 13, 2018, presumably so Reid could close it at CrossCountry. (A true and correct copy of the referenced email is attached hereto as Exhibit M.)

40.     On June 28, 2018, loanDepot discovered that Reid had withdrawn a pending loan for customers TB and LB from loanDepot on May 24, 2018, and sent it to CrossCountry, as evidenced by a CrossCountry loan application. (A true and correct copy of the referenced email is attached hereto as Exhibit T.)

41.     On June 29, 2018, loanDepot received a title insurance commitment with respect to residential real estate to be purchased by customer TS, whose information Reid had forwarded to his Hotmail address via his June 8, 2018, 6:18 AM e-mail from loanDepot. The loan for customer TS's purchase did not close at loanDepot, but on information and belief closed at CrossCountry.

42.     On information and belief, while still employed by loanDepot, Reid worked on dozens of loans at CrossCountry's behest and encouragement and with the assistance of one or more of the Defendants, herein, so that Reid could originate those loans when became he formally employed by CrossCounty.

11

43.     While a loanDepot employee, Reid used a computer to conduct business that he took with him when he resigned from the Company, which has stymied a thorough investigation by the Company of his unlawful conduct.

44.     Additionally, as already mentioned, Reid has been soliciting loanDepot employees to leave the Company and join him at CrossCountry in violation of the non-solicitation provisions of his agreement with loanDepot.

45.     Reid successfully solicited Manara to leave loanDepot with him and join him at CrossCountry in violation of the non-solicitation provisions of his agreement with loanDepot.

46.     Reid has also successfully solicited Loan Processor Maria Noeldechen to leave loanDepot and join him at CrossCountry in violation of the non-solicitation provisions of his agreement with loanDepot.

47.     Reid is actively soliciting Colleen Polson, a Loan Consultant in loanDepot's Stamford, Connecticut office, in violation of the non-solicitation provisions of his agreement with loanDepot.

48.     When Defendant Manara discussed her resignation with  loanDepot Vice President,  Mark McGowen following Reid's departure, she told him she was leaving the Company to go to work for her father. On information and belief, this was a deliberate falsehood intended to deceive the Mr. McGowen  so that Manara could continue to funnel confidential information to Reid and CrossCountry before her own resignation from loanDepot became effective on June 13, 2018.

12

### III.   Post-Employment Obligations.

#### A.   Key Employee Agreement.

49.     On January 16, 2015, Reid electronically signed a Key Employee Agreement ("Key Employee Agreement") with loanDepot (doing business as Mortgage Master), which was effective January 1, 2015.   (A true and correct copy of the Key Employee Agreement electronically signed by Reid and loanDepot's record of Reid's electronic signature is attached hereto as Exhibit O.)

50.     Reid signed the Key Employee Agreement in consideration of "becom[ing] acquainted with and given access to non-public and valuable property and information of Employer and/or of third parties including Employer's customers, brokers and loan investors" and of "enter[ing] or continu[ing] [in] the service of Employer as of the Effective Date entered above." (Key Employee Agreement preamble, §1.)

51.     Under the Key Employee Agreement, Reid agreed to "devote [his] full business time, attention, best efforts, skill and ability exclusively to the business of Employer," and "[t]o do his[] utmost to further enhance and promote the business and welfare of Employer." (Key Employee Agreement §4(a), (d).)

52.     Under the Key Employee Agreement, Reid agreed that during the term of his employment and for two years thereafter, he would not "directly or indirectly, influence or advise any person who is, or shall be, in the service of Employer to leave the service of Employer." (Key Employee Agreement §7(c).)

53.     Reid agreed that to enforce §7(c) of the Key Employee Agreement, "Employer shall be entitled to equitable relief from any court of competent jurisdiction," that "monetary damages will be an inadequate remedy for Employer," and that "Employee shall be responsible

13

for all losses, costs and expenses incurred by Employer, including reasonable attorney fees, incurred by reason of Employee violating the provisions" of §7. (Key Employee Agreement §15.)

54.     Current CrossCountry/former loanDepot employees Christopher Albanese, Peter Costakos and Peter Lucia, each signed the Key Employee Agreements which are in form and substance identical agreements signed by Reid.

55.     On or about July 15, 2011, current CrossCountry/former loanDepot employee Lieberman signed a Branch Operator Agreement, in consideration of becoming branch supervisor of the Aberdeen, New Jersey, Branch. The Branch Operator Agreement's non-solicitation provisions are similar to the Key Employee Agreement's provisions.

## B.    Confidentiality

56.     loanDepot has strict confidentiality policies, which are set forth in written agreements and communicated through the company's handbook.

57.     The Key Employee Agreement provides:

Employee agrees that all non-public information related to Employer's business or Employer's customers, brokers, or loan investor contacts and sources, including but not limited to the Employer's business methods, product pricing, financial information, identity and lists of customers (other than those brought to Employer by Employee, or developed by Employee while employed) and brokers, loans, loan files and contents of same, that Employee learns of, is given access to, or develops, while employed by Employer (collectively, "Confidential Information") is and shall remain without time limit the sole and exclusive property of Employer regardless of how, why or when Employee's employment by Employer ends; that Employer has invested substantial amounts of money in developing and maintaining Confidential Information; that Employee is only permitted to use Confidential Information while employed by Employer and only to the extent needed to perform Employee's job functions and for no other reason; that Employee may not use Confidential Information for any reason whatsoever upon ceasing to be employed by Employer; and that upon ceasing to be employed for any reason by Employer, Employee shall return to Employer all physical and electronic copies of all Confidential Information.

14

(Key Employee Agreement §3.)

58.     The Key Employee Agreement also provides "[t]hat all loans registered with, processed by or applied for with Employer constitute Confidential Information," and that "[a]ll loan applications and loan files shall constitute Confidential Information." (Key Employee Agreement §4(c).)   Likewise, the Key Employee Agreement provides that Employer's "computer software and the contents, files and materials contained thereon or therein or on any such other property" provided to the Employee is "Confidential Information." (Key Employee Agreement §13.)

59.     The Key Employee Agreement prohibits employees both during the term of their employment and thereafter "not to communicate to or use for the benefit of any person, any Confidential Information of Employer nor to disclose the proprietary methods of conducting the business of Employer." (Key Employee Agreement §7(a).)

60.     In enforcing the above-quoted confidentiality provisions of the Key Employee Agreement, "Employer shall be entitled to equitable relief from any court of competent jurisdiction," it being recognized that "monetary damages will be an inadequate remedy for Employer." In addition, "Employee shall be responsible for all losses, costs and expenses incurred by Employer, including reasonable attorney fees, incurred by reason of Employee violating the provisions" of §7. (Key Employee Agreement §15.)

61.     The Branch Operator Agreement Lieberman signed has similar confidentiality and enforcement provisions.

62.     In its employee handbooks, loanDepot also emphasizes the confidentiality of customer information, explaining in the Confidential and Consumer Information Section:

15

> Our customers entrust us with their private and personal financial information, and they expect us to maintain that information in a confidential and secure environment.
>
> Today, technology enables us to maintain more information about customers. Recognizing this, the Company has placed special emphasis on the appropriate collection, storage, and use of customer information. Your role in privacy protection is critical....
>
> Should you at any time become aware of, or suspect that a data breach has occurred, you must immediately notify your manager and IT. Questions about these policies should be directed to Information Technology and/or Human Resources.

(loanDepot Employee Handbook p.17; LDEscrow Employee Handbook p.17. True and correct

copies of the pertinent portion of each Handbook are attached hereto as Exhibits P.)

## IV.     Reid and CrossCountry Ignored loanDepot's Cease and Desist Letter.

63.     On or about June 13, 2018, loanDepot sent via Federal Express a cease and desist

letter of the same date to Reid that stated:

> We understand that you resigned from your employment with loanDepot.com, LLC effective June 8, 2018, and are now employed by Cross Country Mortgage, Inc. ("Cross Country,") a direct competitor of loanDepot. It has come to our attention that you unlawfully are in possession of loanDepot's confidential and proprietary business information (the "Confidential Information"), and that you took such Confidential Information with the intent to use it for the benefit of Cross Country and have been using it for the benefit of Cross Country. Furthermore, we have reason to believe that since your resignation, you have been directly or indirectly soliciting loanDepot's customers to transition their respective loans with loanDepot and move them to Cross Country.
>
> Consequently, the purpose of this correspondence is to remind you of your post-employment obligations to loanDepot and to demand that you immediately cease your actions that are in breach of your obligations to loanDepot.
>
> loanDepot takes very seriously reports of breaches of continuing obligations by its former employees as well as any indication that a competitive employer may have condoned or encouraged such actions. loanDepot will not hesitate to take all necessary action to protect its rights in this regard, including the aggressive prosecution of any and all such conduct. To that end, please be aware that you are required to preserve all documents in your possession, custody, or control

16

related to your employment with loanDepot and Cross Country in anticipation of forthcoming litigation.

In light of the foregoing, we remind you that you have ongoing obligations to loanDepot including, but not limited to:

- Not contacting loanDepot customers after your employment has ended.
- Not contacting employees of loanDepot after your employment has ended, and specifically not for the purpose of interfering with the loanDepot employment relationship. This includes solicitation for other opportunities, notice of new positions or any act or activity that may incidentally cause the employee to leave their employment with loanDepot.
- Maintain the confidential status of all confidential information until it has been made publicly available by or on behalf of loanDepot.
- After employment with loanDepot, not share any confidential information with persons not authorized in writing by loanDepot to receive confidential information, and shall take all reasonable steps necessary to prevent unauthorized parties, including those employed by loanDepot, from obtaining confidential information.

Accordingly, loanDepot demands that you (1) not disclose loanDepot's Confidential Information to any person and/or entity, including your current employer, (2) not solicit loanDepot's customers, employees, vendors, and/or clients, (3) not unfairly compete with loanDepot, (4) immediately return all of loanDepot's property, including all Confidential Information in your possession, custody, or control and immediately confirm in writing that you have returned all such materials, and (5) immediately provide written assurance that you understand your post-employment obligations to loanDepot and will abide by those obligations.

If we do not receive these written assurances, or we further confirm that you have in any way violated your continuing obligations, or otherwise engaged in activity loanDepot views to be unlawful, loanDepot specifically reserves all of its rights and remedies, legal, equitable, and otherwise, including the right to institute an action at any time for injunctive relief, monetary damages, attorney's fees and costs, and/or other damages.

I look forward to receiving your prompt response or that of your counsel.

(A true and correct copy of the foregoing cease and desist letter sent to Reid is attached hereto

as Exhibit Q.)

17

64.     CrossCountry's Chief Legal Counsel was copied on the foregoing cease and desist letter to Reid. (*Id.*)

65.     By letter dated June 20, 2018, CrossCountry's Associate Corporate Counsel responded to loanDepot's cease and desist letter, rejecting its allegations out of hand.  (A true and correct copy of CrossCountry's letter is attached hereto as Exhibit R.)

66.     Reid did not respond to loanDepot's cease and desist letter.

67.     Lieberman, Costakos, Lucia, and Albanese all resigned from loanDepot on or about February 10, 2017, and immediately became employees of CrossCountry.

68.     On or about February 20, 2017, loanDepot sent identical letters of the same date to Albanese, Lieberman, Costakos, and Lucia, reminding them of their post-employment obligations to the Company, including the obligation to preserve Confidential Information and not to solicit loanDepot's employees.

69.     None of Albanese, Lieberman, Costakos, or Lucia ever responded to loanDepot's letters.

## CLAIMS FOR RELIEF

### COUNT ONE
### Breach of Contract
### (Against Reid)

70.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

71.     Through his actions and omissions, Reid has breached and continues to breach his contractual obligations to loanDepot.

72.     As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

18

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count One in its favor and against Defendant Matthew Reid, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT TWO
### Breach of the Duty of Loyalty – Acquiring Adverse Interests
### and Taking Adverse Action Against Employer
### (Against the Individual Defendants)

73.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

74.     The Individual Defendants were employees of loanDepot.  They therefore owed a duty of loyalty to loanDepot, which included but was not limited to not acquiring any interests adverse to loanDepot's and not taking any action contrary to loanDepot's interests while still in its employ.

75.     The Individual Defendants breached their duty of loyalty to loanDepot by acquiring interests adverse to loanDepot's and taking actions contrary to the Company's interests during their employment with the Company.

76.     The Individual Defendants' acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of loanDepot's rights.

77.     As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Two in its favor and against the Individual Defendants, and award the

19

equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT THREE
### Breach of the Duty of Loyalty – Violating Employer Policy on Customer Privacy
### (Against the Individual Defendants)

78.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

79.    loanDepot maintains a strict policy of protecting customer privacy, particularly with regard to customers' financial information.

80.    loanDepot's policy is set forth in its employee handbooks, quoted above.

81.    The Individual Defendants' duty of loyalty to loanDepot included adhering to loanDepot's policy of protecting customer privacy.

82.    The Individual Defendants' transmission of customers' private information outside of the Company violated loanDepot's policy and hence their duty of loyalty to the Company.

83.    The Individual Defendants' acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of loanDepot's rights.

84.    As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Three in its favor and against the Individual Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

20

## COUNT FOUR
### Breach of the Duty of Loyalty – Misappropriation of Trade Secrets
### and Confidential Information
### (Against the Individual Defendants)

85.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

86.    The Individual Defendants owed and owe loanDepot a continuing duty not to use or disclose loanDepot's trade secrets or confidential information acquired during their employment with loanDepot.

87.    The Individual Defendants breached and continue to breach their duty of loyalty to loanDepot by using and disclosing loanDepot's trade secrets and confidential information for their own benefit and the benefit of their new employer, CrossCountry.

88.    The Individual Defendants' acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of loanDepot's rights.

89.    As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Four in its favor and against the Individual Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

21

## COUNT FIVE
### Aiding and Abetting Breach of the Duty of Loyalty– Acquiring Adverse Interests and Taking Adverse Action Against Employer
### (Against CrossCountry)

90.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

91.     CrossCountry has assisted, aided, and/or abetted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so, including but not limited to the Individual Defendants' duty not to acquire any interests adverse to loanDepot's and not to take any action contrary to loanDepot's interests while still in its employ.

92.     CrossCountry has been and is aware of its role in assisting, aiding, and/or abetting the Individual Defendants in breaching their duty of loyalty to loanDepot.

93.     CrossCountry has knowingly and substantially assisted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so.

94.     As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Five in its favor and against Defendant CrossCountry Mortgage, Inc., and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT SIX
### Aiding and Abetting Breach of the Duty of Loyalty –
### Violating Employer Policy on Customer Privacy
### (Against CrossCountry)

22

95.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

96.     CrossCountry has assisted, aided, and/or abetted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so, including but not limited to the Individual Defendants' duty to adhere to loanDepot's policy of protecting customer privacy.

97.     CrossCountry has been and is aware of its role in assisting, aiding, and/or abetting the Individual Defendants in breaching their duty of loyalty to loanDepot.

98.     CrossCountry has knowingly and substantially assisted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so.

99.     As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Six in its favor and against Defendant CrossCountry Mortgage, Inc., and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT SEVEN
### Aiding and Abetting Breach of the Duty of Loyalty –
### Misappropriation of Trade Secrets and Confidential Information
### (Against CrossCountry)

100.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

23

101.    CrossCountry has assisted, aided, and/or abetted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so, including but not limited to the Individual Defendants' duty not to use or disclose loanDepot's trade secrets or confidential information acquired during their employment with loanDepot.

102.    CrossCountry has been and is aware of its role in assisting, aiding, and/or abetting the Individual Defendants in breaching their duty of loyalty to loanDepot.

103.    CrossCountry has knowingly and substantially assisted the Individual Defendants in the conduct that constitutes breach of their duty of loyalty to loanDepot, and continues to do so.

104.    As a result, loanDepot has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Seven in its favor and against Defendant CrossCountry Mortgage, Inc., and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT EIGHT
### Tortious Interference with the Contracts of Reid, Lieberman, Albanese, Costakos, and Lucia with loanDepot
### (Against CrossCountry)

105.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

106.    Upon information and belief, CrossCountry knew of the Key Employee Agreement between loanDepot and Reid, as well as the Company's Agreements with Lieberman, Albanese, Costakos, and Lucia.

24

107.    CrossCountry intentionally and without justification interfered with the contractual relationship between loanDepot, on the one hand, and Reid, Lieberman, Albanese, Costakos, and Lucia, on the other hand, and encouraged and induced Reid, Lieberman, Albanese, Costakos, and Lucia to breach their Agreements with loanDepot, and continues to encourage and induce those individuals to continue said breaches.

108.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Eight in its favor and against Defendant CrossCountry Mortgage, Inc., and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

### COUNT NINE
### Tortious Interference with Contractual Relationships
### and Prospective Economic Advantage
### (Against All Defendants)

109.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

110.    loanDepot has developed and maintained and continues to develop and maintain contractual and prospective relationships with customers, as well as with prospective customers, of whom the Individual Defendants were aware in their capacity as loanDepot employees in the course of their employment with the Company.

111.    Defendants know, knew, or reasonably should know or should have known about these contractual and prospective relationships.

112.    Defendants intentionally, maliciously, and improperly interfered with, and continue to interfere with, loanDepot's contractual and prospective relationships with its

25

customers and, upon information and belief, its prospective customers, including but not limited to inducing them to sever or not to commence contractual relationships with loanDepot.

113.    Defendants have used and continue to use loanDepot's trade secrets and confidential information to compete unlawfully with loanDepot and to undermine loanDepot's existing contractual and prospective relationships with customers and prospective customers.

114.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Nine in its favor and against Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT TEN
### Employee Piracy
### (Against CrossCountry and Reid)

115.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

116.    Defendants have targeted loanDepot for the raiding and pirating of its employees and have engaged, and continue to engage, in a campaign against loanDepot, using the wrongful, improper, and unlawful conduct described above in order to recruit employees from loanDepot for the improper purpose of injuring loanDepot and/or to benefit Defendants at the expense of loanDepot.

117.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

26

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Ten in its favor and against Defendants CrossCountry Mortgage, Inc., and Matthew Reid, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT ELEVEN
## Common Law Misappropriation of Trade Secrets and Confidential Information
### (Against All Defendants)

118.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

119.    During their employment with loanDepot, the Individual Defendants acquired knowledge of loanDepot's trade secrets and confidential information, which loanDepot had communicated to them in confidence.

120.    In breach of that confidence, the Individual Defendants disclosed loanDepot's trade secrets and confidential information to CrossCountry, including but not limited to Reid's disclosure of such information to CrossCountry's employee and agent Justin Lieberman.

121.    CrossCountry acquired loanDepot's trade secrets and confidential information with knowledge of the Individual Defendants' breach of loanDepot's confidence.

122.    Defendants have used and continue to use loanDepot's trade secrets and confidential information to the Company's detriment.

123.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Eleven in its favor and against Defendants, and award the equitable and

27

legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT TWELVE
## Actual and Threatened Misappropriation Under the New Jersey Trade Secrets Act
### (Against All Defendants)

124.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

125.    Defendants have actually misappropriated loanDepot's trade secrets.

126.    Defendants' ongoing course of conduct constitutes continuing misappropriation of loanDepot's trade secrets and also threatens further misappropriation of loanDepot's trade secrets.

127.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

128.    loanDepot is entitled to all relief available pursuant to the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 et seq.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Twelve in its favor and against Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT THIRTEEN
## Violation of the Defend Trade Secrets Act (18 U.S.C. §1832 et seq.)
### (Against All Defendants)

129.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

28

130.     The Individual Defendants' efforts to send loans that had originated at loanDepot to CrossCountry, and otherwise to solicit loanDepot customers, necessarily involves their use, on behalf of CrossCountry, of such information as the names, addresses, account information, financial information, tax information, and borrowing needs of loanDepot's customers, and of the Company's methods, services, pricing, practices, techniques, sales, and marketing, in breach of the Individual Defendants' contractual and legal duty to maintain the secrecy of such information and to return such information to loanDepot upon their resignation from the Company.

131.     The Individual Defendants' use of such Company information on behalf of CrossCountry was known to and encouraged and assisted by CrossCountry.

132.     The information the Individual Defendants took from loanDepot and used to compete with loanDepot on CrossCountry's behalf, with the encouragement and assistance of CrossCountry, constitutes trade secrets of loanDepot subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

133.     This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to loanDepot's competitors. loanDepot spends significant sums, in terms of both financial and human resources, to develop, maintain, and safeguard this information, which is of great value to any competitor.

134.     loanDepot has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, and having contracts and policies that expressly prohibit the use, removal, and disclosure of such information outside the Company.

135.     CrossCountry aided, abetted, and facilitated the Individual Defendants' theft and misappropriation of loanDepot's trade secrets.   Additionally, Defendants are currently in possession of loanDepot's trade secrets and acquired them by improper means.

136.     The conduct of Defendants set forth in this Count and throughout this Complaint constitutes a misappropriation and misuse of loanDepot's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

137.     The Individual Defendants' misappropriation of loanDepot's trade secrets, and CrossCountry's material assistance and facilitation of the same, have caused loanDepot irreparable injury for which monetary damages alone are an inadequate remedy.

138.     Defendants willfully and maliciously misappropriated loanDepot's trade secrets, and loanDepot is therefore entitled to recover, in addition to the damages provided in the Defend Trade Secrets Act, two times its damages and the reasonable attorney fees it incurs in this action, appropriate royalties for the trade secrets that Defendants misappropriated, as well as any amount by which Defendants were unjustly enriched by their misappropriation.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Thirteen in its favor and against Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT FOURTEEN
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030)
### (Against CrossCountry)

139.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

30

140.    loanDepot's computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased and used by loanDepot in interstate or foreign commerce or communication.

141.    Upon information and belief, CrossCountry, through individuals working on its behalf, including but not limited to the Individual Defendants, knowingly, intentionally, and with the intent to defraud loanDepot accessed loanDepot's computers without authorization in an effort to download, copy, transfer, or in some manner obtain files, documents, spreadsheets, programs, code, macros, and/or electronically stored information containing loanDepot's confidential information.

142.    CrossCountry was not authorized to access loanDepot's computers.

143.    Upon information and belief, CrossCountry utilized third persons, including but not limited to the Individual Defendants, to obtain the access to loanDepot's computers.

144.    CrossCountry cannot obtain through third persons the authority to access loanDepot's computers that CrossCountry does not itself have.

145.    As a result, CrossCountry caused loanDepot damages and loss in excess of $5,000.  This loss includes but is not limited to the cost to loanDepot of responding to CrossCountry's violations described above, which consisted of an interruption of service and use of CrossCountry's computers in order to investigate and assess the unauthorized access and loss; a damage assessment; and the investigation of loanDepot's computers and related systems following CrossCountry's violations, as alleged above.

146.    As a consequence of the foregoing, loanDepot has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of confidential information that belongs to loanDepot

31

and resided on its computers and computer systems, as alleged above; other business damages; and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Fourteen in its favor and against Defendant CrossCountry Mortgage, Inc., and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT FIFTEEN
### Unfair Competition
### (Against All Defendants)

147.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

148.    By virtue of their acts and omissions, Defendants have unfairly misappropriated the trade secrets, proprietary information, existing or prospective customer relationships of loanDepot, have sought unfairly to capitalize on the goodwill of loanDepot, and have employed unfair and/or deceptive practices intended to hinder delay, divert, or prevent loanDepot from fairly competing with Defendants.

149.    Defendants have engaged in such acts or omissions maliciously and for the sole purpose of inflicting harm on loanDepot, or to benefit themselves at the expense of loanDepot.

150.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Fifteen in its favor and against Defendants, and award the equitable and

legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT SIXTEEN
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## (Against Reid)

151.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

152.    The Key Employee Agreement between loanDepot and Reid includes an implied covenant of good faith and fair dealing.

153.    Reid's acts and omissions constitute breach of the implied covenant of good faith and fair dealing included in his Key Employee Agreement with loanDepot.

154.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Sixteen in its favor and against Defendant Matthew Reid, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT SEVENTEEN
## Unjust Enrichment
## (Against All Defendants)

155.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

156.    Defendants have been unjustly enriched at loanDepot's expense.

157.    As a result, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

33

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Seventeen in its favor and against Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT EIGHTEEN
### Civil Conspiracy
### (Against All Defendants)

158.     loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

159.     Defendants conspired and agreed to engage in the unlawful and tortious conduct described herein, deliberately engaged in such conduct in furtherance of their unlawful plans and schemes, acted on behalf of one another at all relevant times, intentionally and/or knowingly accepted the illicit benefits of the conspiracy, and intentionally and/or knowingly participated in, profited from, and/or ratified the misconduct of one another.

160.     Each Defendant is liable for the conduct of the other Defendants and any other participants in the conspiracy.

161.     As a result of Defendants' conduct, loanDepot has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Eighteen in its favor and against Defendants, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

34

## COUNT NINETEEN
### Injunctive Relief
### (Against All Defendants)

162.    loanDepot repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

163.    By virtue of the foregoing, loanDepot has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

164.    Unless Defendants are preliminarily and permanently enjoined from the foregoing conduct, loanDepot will be irreparably harmed by:  (a) disclosure and misuse of trade secrets and confidential information, including but not limited to customer information, that is solely the property of loanDepot; (b) loss of business; (c) loss of customer goodwill and business reputation; (d) loss of customer relationships and prospective relationships; (d) present economic loss, which is unascertainable at this time; and (e) future economic loss, which is currently incalculable.

165.    loanDepot has no adequate remedy at law.

WHEREFORE, Plaintiff loanDepot.com, LLC, respectfully requests that the Court enter judgment on Count Nineteen in its favor and against Defendants, and award the equitable remedies of a temporary restraining order, preliminary injunction, and permanent injunction, and any other relief the Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff loanDepot.com, LLC, being without adequate remedy at law, and being threatened with the continuance of irreparable injury, demands judgment in its favor and against Defendants for the following relief:

35

A.     A temporary restraining order, preliminary injunction, and permanent injunction, enjoining the Defendants, directly or indirectly, and whether alone or in concert with others, including but not limited to any officer, agent, employee, and/or representative of CrossCountry, from:

(i)     continuing to process or otherwise handle any loan that originated at loanDepot, or about which Reid first had contact with the customer while still employed with loanDepot;

(ii)    soliciting, diverting away, or attempting to solicit or divert away any loanDepot customer;

(iii)   hiring any loanDepot employees;

(iv)   soliciting any loanDepot employee to leave employment with loanDepot or to act in any way in a manner contrary to loanDepot's interests or such employee's duty of loyalty to loanDepot;

(v)    retaining, using, possessing, disclosing to any person, or facilitating the use of or assisting others to use, the Company data, secrets, and confidential information as described herein and in the Key Employee Agreement of Reid with loanDepot; and

(v)    otherwise engaging in any activity in breach of Reid's Key Employee Agreement;

B.     An Order that Defendants, and anyone acting in concert or participation with them, including but not limited to counsel, and any agent, employee, officer, or representative of CrossCountry, return to loanDepot's counsel any and all Company data, secrets, trade secrets, and confidential and/or proprietary information; records or information pertaining to loanDepot's customers or prospective customers, whether in original, copied, computerized, handwritten or any other form; to purge any such information from their possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order; provided, however, that any information in computerized or electronic form (including

36

but not limited to computers, tablets, smartphones, compact or floppy discs, flash (thumb) drives, hard drives, cloud storage, and any other device or media in or on which data can be electronically stored) shall be given by Defendants to their counsel within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order; Defendants' counsel shall preserve the integrity of such data, devices, and storage media, and shall immediately (and in no event later than seven calendar days after the entry of this Order) make any and all such data, devices, and media available for inspection, imaging, and duplication by loanDepot's counsel and/or loanDepot's computer forensic employees or consultants. After imaging and inspection of the electronic devices by loanDepot, all Company data, secrets, trade secrets, and confidential and/or proprietary information shall be deleted and/or purged from the devices by loanDepot;

C.      An award of compensatory and consequential damages, in an amount to be determined at trial, incurred by loanDepot as a result of the actions of Defendants;

D.      Disgorgement of all of the compensation loanDepot paid the Individual Defendants during the period of their disloyalty;

E.      An accounting and disgorgement of any profits earned by the Defendants as a result of Defendants' unlawful activities;

F.      An Order granting loanDepot immediate discovery, and ordering the Individual Defendants to immediately appear for deposition and produce all documents, including but not limited to electronically stored data, containing information obtained by the Individual Defendants from or about loanDepot, including but not limited to loanDepot's Company data, secrets, trade secrets, and confidential and/or proprietary information, and customer information;

FPDOCS 34331269.1

G.      An Order that Defendants protect and safeguard loanDepot's Company data, secrets, trade secrets, and confidential and/or proprietary information, including but not limited to any data, property, materials, documents, records, and information relating to the customers, prospective customers, or activities of loanDepot;

H.      Punitive damages against the Defendants;

I.       Costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

J.      Such other and further relief as this Court may deem equitable and just.

## JURY DEMAND

loanDepot demands a jury trial on all issues in this action.

Respectfully submitted by:

KATHLEEN McLEOD CAMINITI
For Fisher & Phillips LLP
Attorneys for Plaintiff loanDepot.com, LLC
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Tel.: (908) 516-1050
Fax: (908) 516-1051
E-Mail:  kcaminiti@fisherphillips.com

Dated:  July26, 2018

38

## **VERIFICATION**

I, Mark McGowen, verify that I am employed by Plaintiff loanDepot.com, LLC, as Vice President, and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case I believe them to be true, and (2) legal conclusions, for which I expressly defer to Plaintiff's counsel. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: July 26, 2018

Mark McGowen

FPDOCS 34331269.1