UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOANDEPOT.COM,<br><br>Plaintiff,<br><br>v.<br><br>CROSSCOUNTRY MORTGAGE, INC., et al.,<br><br>Defendants. | Civ. No. 18-12091 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Now before me is the motion of defendant Justin Lieberman to compel arbitration and stay this action as against all defendants. (DE 44). Also before me is the motion (DE 45) of defendant CrossCountry Mortgage, Inc. ("CrossCountry") joining in Lieberman's motion to compel arbitration and requesting that the claims against CrossCountry be stayed pending the outcome of that arbitration. The motion to compel arbitration of the claims against Lieberman is granted to the extent that those claims are referred to the arbitrator, who will decide the issue of arbitrability. Only the claims against Lieberman in this action are stayed. CrossCountry's motion to stay the claims against itself in this action is denied.

I. **Summary**[1]

a. **Procedural History**

On July 26, 2018, loanDepot.com ("loanDepot") filed a Complaint (DE 1), attaching an application for temporary restraints and injunctive relief. (DE 1-2,

---

[1] For ease of reference, Ex. A to Lieberman Decl. [DE 44-2, pp. 4 – 15] will be referred to as the "Branch Operator Agreement." The Amended Complaint [DE 33] will be cited as "1AC."

1

1-3). On July 27, 2018, this Court denied loanDepot's application for temporary restraints, but ordered defendants CrossCountry, Matthew Reid, and Andrea Manara to appear before the Court to show cause why the Court should not enter an order granting loanDepot its requested preliminary injunction. (DE 5, 6, 7). On August 1, 2018, loanDepot withdrew its application for a preliminary injunction, and the scheduled hearing was cancelled. (DE 9, 10, 11).

On October 19, 2018, loanDepot filed its (1st) Amended Complaint. (DE 33, cited herein as "1AC") The Amended Complaint brings claims against Lieberman for breach of the duty of loyalty by acquiring adverse interests and taking action against loanDepot, his employer (Count Five); aiding and abetting breach of the duty of loyalty by violating employer policy on customer privacy (Count Six); aiding and abetting breach of the duty of loyalty by misappropriating of trade secrets and confidential information (Count Seven); tortious interference with the contracts of Reid, Christopher Albanese, Peter Costakos, and Peter Lucia with loanDepot (Count Eight); tortious interference with contractual relationships and prospective economic advantage (Count Nine); employee piracy (Count Ten); common law misappropriation of trade secrets and confidential information (Count Eleven); actual and threatened misappropriation under the New Jersey Trade Secrets Act (Count Twelve); violation of the Defend Trade Secrets Act (Count Thirteen); unfair competition (Count Fifteen); and civil conspiracy (Count Seventeen). (1AC)

The Amended Complaint seeks permanent injunctive relief. (*Id.* p. 43). loanDepot has not, however, sought temporary restraints or a preliminary injunction against Lieberman to "protect its rights pending the outcome of arbitration" as provided for in the Branch Operator Agreement, discussed *infra*.

On November 27, 2018, Lieberman filed this motion to compel arbitration and stay the entire action. (DE 44). On November 27, 2018, defendant CrossCountry filed a motion supporting Lieberman's motion to compel arbitration and seeking to stay this action as against itself, pending the outcome of Liberman's arbitration. (DE 45). On December 19, 2018, loanDepot

filed an opposition to Lieberman's motion. (DE 47). On January 2, 2019, Lieberman filed a reply in support. (DE 48).

### b. Facts

On July 15, 2011, Lieberman signed a Branch Operator Agreement in connection with becoming branch supervisor of the Aberdeen, New Jersey branch of loanDepot. (1AC ¶ 64). loanDepot did not attach Lieberman's Branch Operator Agreement to the Amended Complaint. Even so, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factor Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The Branch Operator Agreement is "explicitly relied upon" or "integral" to the Amended Complaint. *Id.* The Amended Complaint expressly refers to Lieberman's Branch Operator Agreement several times. In the facts section, the Complaint lists the individual defendants' post-employment obligations, including those found in the non-solicitation provisions in Lieberman's Branch Operator Agreement. (1AC ¶ 64). Discussing loanDepot's "strict confidentiality policies" (*id.* ¶ 66), the Amended Complaint lists the confidentiality and enforcement provisions in the Branch Operator Agreement (*id.* ¶ 71). In addition, the Amended Complaint alleges that after Lieberman left the company and became an employee of CrossCountry (*id.* ¶ 77), loanDepot sent a letter to Lieberman reminding him of his post-employment obligations to loanDepot, including the obligation under the Branch Operator Agreement to preserve Confidential Information and not to solicit loanDepot's employees (*id.* ¶ 78). The substantive Counts expressly incorporate the preceding factual allegations, including those relating to the Branch Operator Agreement. (*See e.g.*, Count Five, Am. Compl. p. 25). There is apparently no dispute as to the existence or authenticity of the Branch Operator Agreement. I may therefore consider it without converting Lieberman's motion to one for summary judgment.

The Branch Operator Agreement includes an arbitration clause, located at Section 16(f):

3

> (f) Arbitration. In the event that any dispute should arise between the parties hereto as to the validity of this Agreement, or as to the construction, enforcement or performance of this Agreement, such dispute shall be settled by arbitration before a single arbitrator conducted at Norfolk County, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The full rules of discovery shall apply to any such proceeding. The decision of the arbitrator shall be final and binding on all parties thereto, and judgment upon any award entered in such arbitration shall pay to the successful party all costs and expenses, including actual attorneys' fees, incurred therein by such successful party and such costs, expenses and attorneys' fees shall be included in and as part of such judgment or award. The determination of the arbitrator shall be conclusive on the matter of which party is successful for purposes hereof. In no event, however, shall this paragraph be deemed to preclude a party hereto from instituting legal action seeking relief in the nature of a restraining order, an injunction[sic] or the like in order to protect his or its rights pending the outcome of an arbitration hereunder.[2] With respect to matters submitted to arbitration other than claims for payment of monies due, the parties shall continue to perform their obligation hereunder relative to said matters pending resolution of the dispute by arbitration.

(Branch Operator Agreement, §16(f)).

## II. Discussion

### a. Legal standard

This Circuit's case law has meandered somewhat in defining the proper standard of review of a motion to compel arbitration. The upshot, however, is fairly clear. Where the issue can be decided without evidence, it will be, based on an application of the familiar Rule 12(b)(6) standard to the face of the pleadings. Failing that, however, the Court will permit discovery and decide the issue on a summary judgment standard, pursuant to Rule 56. If there is a genuine issue of fact, summary judgment will be denied and the issues will be tried.

---

[2]    As noted, the plaintiff has not sought interim injunctive relief against Lieberman pending the outcome of the arbitration (or the lawsuit).

4

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. The judiciary must balance the competing goals of the FAA: the speedy and efficient resolution of disputes, and the enforcement of private agreements. *Id.* at 773. Reconciling sometimes murky precedent in light of those competing interests, the *Guidotti* court reasoned that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74. Such an approach "appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, '[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." *Id.* at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3d Cir. 1979).

"In many cases, however, a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.*

> [The Rule 12(b)(6) standard will not be appropriate] when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the

5

complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.

Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

*Id.* (internal citations and quotations and external citation omitted).

Thus, where the complaint and supporting documents are unclear as to an agreement to arbitrate or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery. After limited discovery, a court may then "entertain a renewed motion to compel arbitration" and should review such a motion under the summary judgment standard.

If summary judgment is unwarranted in light of material factual disputes regarding an agreement's enforceability, a court should then proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In every instance, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54).

### b. Analysis

I now consider the motion of defendant Lieberman to compel arbitration and to stay this action as against himself and all other defendants. (DE 44).

6

Lieberman's codefendant CrossCountry has moved in support of Lieberman's motion, and seeks a stay of this action as to itself, pending the outcome of Lieberman's arbitration. (DE 45).

### i. Motion to compel arbitration

The issue of the arbitrator's jurisdiction to hear a case is, by default, one to be decided by the Court. *See AT&T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 651 (1986). Although an arbitrator may resolve procedural issues and the merits of the dispute, an arbitrator may not ordinarily resolve the question of whether he or she has jurisdiction to arbitrate, or the scope of that jurisdiction. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 183 (3d Cir. 2010). If contested, that question—whether the dispute can be arbitrated at all—requires a ruling by the court, unless the parties have agreed otherwise. *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 111 (3d Cir. 2000) ("[A]llow[ing] the arbitrators to determine their own jurisdiction is not permitted in the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[S]ilence or ambiguity on the 'who should decide arbitrability' point must be resolved in favor of judicial resolution of questions of arbitrability." *First Options*, 514 U.S. at 945. *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S. Ct. 1204 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801 (1967).

All that being said, the parties are masters of their own contract, and an agreement may validly provide that the arbitrator is to determine his or her own jurisdiction. *Sandvik*, 220 F.3d at 112 ("[T]he question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise"). To overcome the presumption that the court decides arbitrability, the agreement's commitment of that issue to the arbitrator must be clear and unmistakable.

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016) (internal citations omitted).

This Court has previously found that, "by agreeing to arbitrate in accordance with AAA rules, the parties to [an arbitration agreement] clearly and unmistakably agreed to arbitrate the issue of arbitrability." *Neal v. Asta Funding, Inc.*, Civ. No. 13-6981, 2016 WL 3566960, at *14 (D.N.J. June 30, 2016) (McNulty, J.). Other courts within this Circuit have followed the same reasoning. *See e.g.*, *KDDI Glob. LLC v. Fisk Telecom LLC*, Civ. No. 17-5445, 2017 WL 5479512, at *7 (D.N.J. Nov. 15, 2017) (Ruling that an arbitration agreement's incorporation of the AAA Commercial Arbitration Rules "explicitly and unequivocally requires an Arbitrator to decide the issue of arbitrability") (Martinotti, J.); *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 526 (D. Del. 2016) (holding that, because the arbitration agreement incorporated the JAMS Comprehensive Arbitration Rules, the arbitrator would determine the arbitrability of disputed claims, including misappropriation of trade secrets, unfair competition, and common law unfair competition). The Third Circuit itself has observed, though not held, that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (internal citations omitted).[3]

---

3     The Third Circuit precedents require some explication.

First, in *Quilloin v. Tenet HealthSystem v. Philadelphia, Inc.*, 673 F.3d 221 (3d Cir. 2012), the Third Circuit held that, because the agreements at issue did not contain an agreement to arbitrate arbitrability, the issue of arbitrability was one before the Court. *Id.* at 229. As to at least one of those agreements, the "procedural rules" of the AAA were incorporated. *Id.* at 226. In *Quillon*, however, the parties did not make the incorporation argument, so the Court did not address the issue.

Later, in *Chesapeake Appalachia*, 809 F.3d at 763, the Third Circuit acknowledged the general rule that "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." It distinguished that precedent, however, holding that incorporation of the AAA rules did not grant an arbitrator the power to rule on the arbitrability of *class* claims. *Id.* at 766. To simplify somewhat, the Court reasoned that bilateral and class

8

*See also e.g., Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir.2013); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005)).

It is not controversial that "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). Rule 1 of the AAA Commercial Arbitration Rules states a general principle by which the AAA Rules are incorporated into arbitration agreements:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules . . .

AAA Commercial Arbitration Rules & Mediation Procedures, Rule 1. One of those incorporated rules is Rule 7, which commits the issue of arbitrability to the arbitrator:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

AAA Commercial Arbitration Rules & Mediation Procedures, Rule 7. It follows that by designating and incorporating the AAA rules, a contractual arbitration provision delegates issues of arbitrability to the arbitrator. *Neal*, 2016 WL 3566960 at *14.

Here I am presented with an arbitration provision that very clearly incorporates the AAA Commercial Arbitration rules:

> In the event that any dispute should arise between the parties hereto as to the validity of this Agreement, or as to the construction,

---

arbitration are distinct; because the AAA rules do not explicitly confer upon the arbitrator the power to determine the arbitrability of class claims, the incorporation of those rules would not constitute a clear and unmistakable delegation of that issue to the arbitrator. *Id.* at 762–766. The arbitrability of claims against Lieberman does not implicate class issues, and *Chesapeake*'s carving out of an exception for class claims does not undercut its endorsement of the usual rule that the arbitrator is empowered to determine the arbitrability of non-class claims.

9

> enforcement or performance of this Agreement, such dispute shall
> be settled by arbitration before a single arbitrator conducted at
> Norfolk County, Massachusetts, in accordance with the Commercial
> Arbitration Rules of the American Arbitration Association.

(Branch Operator Agreement, §16(f)). On its face, then, the agreement incorporates Rule 7 and thereby commits to the arbitrator all issues "with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arb. R. 7.

Plaintiff loanDepot proffers three arguments in response. First, loanDepot argues, as a matter of contract construction, that this dispute is not one that should go to an arbitrator at all. (DE 47, pp. 15–17). Second, loanDepot argues that because the arbitration agreement does not specify which version of the AAA rules is incorporated, it does not constitute a clear and unmistakable commitment of the issue to the arbitrator. (*Id.* p. 19–20). Third, loanDepot argues that the issue of arbitrability does not even rise to the level of being colorable, and therefore should be retained by this Court for decision. (*Id.* pp. 20–23).[4]

### 1. Contract construction

I consider loanDepot's first argument, which is one of contractual interpretation. loanDepot argues that the arbitration provision's main sentence, quoted above, is conditional. In loanDepot's view, the AAA rules are incorporated only as to disputes regarding the validity, construction, enforcement, or performance of the agreement. (Branch Operator Agreement, §16(f)). Thus, says loanDepot, the Court must first determine whether each claim against Lieberman falls under one of those categories; only if it finds in

---

[4] Actually, there is a fourth argument. loanDepot argues that under Third Circuit precedent, incorporation of the AAA rules is not sufficient to take the question of arbitrability from the Court. (*Id.* pp. 17–19). As explained in n.3, *supra,* I disagree with loanDepot's interpretation of *Quilloin* and *Chesapeake,* and therefore will not address this fourth argument any further.

10

the affirmative may the Court submit that claim for the arbitrator's consideration.[5]

I agree that the arbitration clause limits itself to "any dispute [that] should arise between the parties . . . as to the validity . . . construction, enforcement or performance of this Agreement."[6] (Branch Operator Agreement, §16(f)). Still, loanDepot's "conditional" view of the clause is of little consequence to the issue of arbitrability. I point loanDepot, for example, to the condition of "construction . . . of this Agreement." (*Id.*). Arbitrability is itself a question of construction or interpretation of the arbitration agreement. In this case, the issue may turn on the question of whether the claims against Lieberman are disputes as to the "enforcement or performance" of the agreement. (*Id.*). That is a question of "construction" of the contract, which, under the Branch Operator Agreement, is to be arbitrated pursuant to the Commercial Arbitration Rules of the AAA—including Rule 7. (*Id.*). The Agreement may, as claimed, confine arbitrability to "issues of the validity . . . construction, enforcement or performance of this Agreement"—but it is the arbitrator who will decide whether the claims against Lieberman fall within those arbitrable categories.

### 2. Version(s) of the AAA rules

Next, I consider loanDepot's argument that the arbitration provision's failure to specify a particular year or version of the AAA rules creates a "fatal ambiguity" in the contract. (DE 47 p. 19) (citing *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 474 (W.D. Pa. 2016)). I disagree.

Lieberman and loanDepot entered into the agreement at issue on July 15, 2011. Since at least 1998, the AAA Commercial Arbitration Rules have

---

[5] To some degree, this amounts to a requirement that the Court pre-decide the question of arbitrability before submitting that question to the arbitrator. How this differs from simply deciding the issue of arbitrability presents a subtle question.

[6] Further, the arbitration provision does not cover "legal action seeking relief in the nature of a restraining order, an injunction or the like in order to protect his or its rights pending the outcome of an arbitration hereunder." (Branch Operator Agreement, §16(f)).

11

explicitly provided that that the arbitrator shall have the power to rule on his or her own jurisdiction. AAA Revises Commercial Arbitration Rules, Disp. Resol. J., NOVEMBER 1998, at 4, 96 (discussing former Rule 8); *see also* Summary of Changes, AAA Commercial Arbitration Rules and Mediation Procedures, (July 1, 2003) (summarizing changes to the AAA Commercial Arbitration Rules and Mediation Procedures, including redesignation of Rule 8 as Rule 7).[7] Further, at least as far back as 2003—the date of the oldest archived version of the rules on the AAA website—Rule 1(a) stated the same rule of incorporation discussed above, and Rule 7 empowered the arbitrator to rule on the scope of arbitrability under agreements governed by the AAA Rules.[8]

This Branch Operator Agreement is dated July 15, 2011, long after the relevant principles had become firmly established in the Rules. There is no ambiguity in the AAA Commercial Arbitration Rules that applied as of that date. If the parties had intended to bypass the current version of the AAA Commercial Arbitration Rules and Mediation Procedures and incorporate some version from decades prior, they surely would have spelled out that eccentric intent. All post-1998 versions are substantially similar as to the arbitrator's power to rule on arbitrability. The arbitration provision's failure to specify a year or version of the AAA Rules does not detract from its unmistakable clarity.

---

[7] That summary may be located at https://www.adr.org/sites/default/files/Summary%20Changes%20Commercial%20Arbitration%20Rules%20and%20Mediation%20Procedures%20Jul%2001%2C%202013.pdf.

[8] AAA Commercial Arbitration Rules & Mediation Procedures, Rule 1 (July 1, 2003) ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules."), located at https://www.adr.org/sites/default/files/Commercial%20Arbitration%20Rules%20and%20Mediation%20Procedures%20Jul.%2001%2C%202003.pdf.

AAA Commercial Arbitration Rules & Mediation Procedures, Rule 7 (July 1, 2003) explicitly provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.").

### 3. "Wholly groundless" arbitrability arguments

Finally, I consider loanDepot's argument that the issue of arbitrability must remain before the Court because "it is not even arguable" that the claims against Lieberman fall within the arbitration provision. (DE 47, p. 20). The Supreme Court has recently ruled, however, that when an arbitration provision delegates the arbitrability question to the arbitrator, the court has no power to decide it. That remains so "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is *wholly groundless.*" *Henry Schein*, 139 S. Ct. at 529 (emphasis added). There is no preclearance or gatekeeper role for the court in such a case. loanDepot's vehement arguments against arbitrability may be presented to the arbitrator, who possesses the sole authority to decide that issue.

### ii. Motion to stay

Lieberman argues that, because the disputes between Lieberman and loanDepot are "inextricably intertwined" with the other issues in this case, and because there is a "substantial overlap among the parties and issues," the entire action should be stayed. (DE 46 p. 11; *see also* DE 44). CrossCountry, too, has moved for a stay as to claims against itself. (DE 45).

To implement the federal policy in favor of arbitration, Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that trial must be stayed pending arbitration of those issues:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . ., the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

FAA, 9 U.S.C. § 3.

When some but not all of the issues are subject to arbitration, the decision whether to stay non-arbitrable issues is discretionary. Where, for example, the arbitrable and non-arbitrable issues and parties significantly overlap, a court may elect to decide to stay the entire action pending arbitration. *See Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) (citing *Tenneco Resins, Inc. v. Davy Intern.*, 770 F.2d 416 (5th Cir. 1985); *American Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961 (4th Cir. 1980); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F. Supp. 1146 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973); *Harman Elec. Const. Co. v. Consolidated Eng. Co.*, 347 F. Supp. 392, 397 (D. Del. 1972)).[9]

The usual rule, however, is that the court will stay only the arbitrable claims and will permit the others to proceed: "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 254–255 (1936) (quoted in *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21).

Three defendants aside from Lieberman (CrossCountry, Manara, and Reid) are content to stay their claims; indeed, it seems likely that Lieberman's motion is part of a joint defense strategy. Still, those defendants do not have

---

[9] That power to stay is part of the district court's authority to control its docket. As a component of that discretion, the court has the inherent power to stay its own proceedings. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 (citing *Landis v. North American Co.*, 299 U.S. 248, 254–255 (1936)). In *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, the Third Circuit, citing *Landis*, reasoned that a stay of court proceedings pending arbitration is a remedy that is "within the inherent power of the court and does not require statutory authority." 387 F.2d 768, 773 (3d Cir. 1967); *see also Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 443 F.2d 807, 809 (3d Cir. 1971) (citing *Yale & Towne Mfg. Co. v. Local Lodge 1717, Machinists*, 299 F.2d 882 (3d Cir. 1962) ("Certainly, the normal power of a court to do equity enables it to postpone action on a complaint pending the outcome of a procedure for resolving such a dispute upon which the parties have agreed."); *Vespe Contracting Co. v. Anvan Corp.*, 399 F. Supp. 516, 519 (E.D. Pa. 1975) (holding that the court "need rely neither on the United States Arbitration Act nor the Pennsylvania Arbitration Act . . . in order to support a decision to grant a stay of proceedings pending arbitration").

arbitration agreements with the plaintiff that would entitle them to a stay. And there are the plaintiff's rights to consider; as to the claims against those three defendants, the plaintiff has an unquestioned right to bring its disputes before the Court, and I give due weight to that. At this juncture, the extent to which the claims against Lieberman will ultimately be found arbitrable is unknown, complicating any assessment of "overlap" or "intertwining." It is clear, however, that a decision as to whether Lieberman breached (or was induced to breach) his employment contract will not necessarily settle the same issue as to other loanDepot employees. It is also clear that the allegations against Lieberman are both narrower and different in character from those against, *e.g.*, Reid and Manara. (The first four counts, for example, name only Reid and Manara.) There is little danger of this action's going to judgment while the relatively discrete issue of arbitrability is being decided in Lieberman's case. I see little benefit in holding up discovery and other preliminary proceedings (which will not go to waste in any event) while that occurs.

The dispute between Lieberman and loanDepot will therefore be referred to arbitration, and the litigation as to Lieberman will be stayed pending the outcome of the arbitrator's ruling on arbitrability and, if arbitration proceeds, pending the arbitration of those claims. The motions to stay are otherwise denied, however, and the remainder of the case will go forward in this Court.

### III. Conclusion

For the reasons stated above, the motion of Lieberman (DE 44) to compel arbitration of the claims against Lieberman is granted to the extent that those claims are referred to the arbitrator, who will decide the issue of arbitrability. Only the claims against Lieberman in this action are stayed. The motion of Lieberman to stay the claims against all defendants and the motion of CrossCountry (DE 45) to stay the claims against itself are denied.

An appropriate order follows.

Dated: June 24, 2019

                                                              */s/ Kevin McNulty*
                                                              **Kevin McNulty**
                                                              **United States District Judge**